■ In the Matter of the Estate of ROBERT R. OHLSON, Deceased. GRETA E. OHLSON et al., Respondents; AMELIA R. OHLSON, as Administratrix of the Estate of ROBERT R. OHLSON, Deceased, Appellant.— Decree unanimously reversed on the law and facts, without costs, and matter remitted to Monroe County Surrogate's Court for the making of an order dismissing the petition and reinstating appellant's letters of administration. Findings of fact which may be inconsistent herewith are reversed and new findings made. Memorandum: Decedent's widow appeals from a decree of Monroe County Surrogate's Court which upon the petition of decedent's sisters, revoked her letters of administration. Decedent died intestate on May 31, 1966 survived by his widow and the two sisters Greta Ohlson and Sigrid Pierleoni. The

widow was entitled to decedent's estate (Decedent Estate Law, § 83) unless she had abandoned her husband (Decedent Estate Law, § 87, subd. [d]). The petition herein alleges that "she had wrongfully and intentionally abandoned said decedent and had left his home * * * without just cause, without intent to return, and in fact she never did return." The only proof in support of the allegation of abandonment was given by the petitioners, the husband of petitioner, Pierleoni and testimony of the widow in an examination before trial. Mrs. Pierleoni testified that in the fall of 1957 Amelia told her, "I'm not happy and I'm going to leave Robert" and a few months thereafter she left him. Mr. Pierleoni testified that Amelia said "I don't think I could put up with this any more," and that she was going to leave her husband for physical reasons and shortly thereafter she left him; decedent told him "Amelia left me" and he felt maybe she might come back. The widow testified that as a result of excessive abuses of sexual relations by her husband she had become very nervous and upset. She consulted with a doctor, a priest and a lawyer. Her husband also consulted a lawyer. She and her husband discussed the possibility of her moving and in September, 1956 she did move to an apartment. Her husband often came to her apartment and she often went to his. A month after she moved he paid $1,000 on her purchase of a new automobile. He paid the premiums on her fire insurance and made her beneficiary of the life insurance policy which was in effect when he died. He purchased and installed an air conditioning unit in her apartment. She maintained hospital service and medical care insurance coverage for him. Decedent visited the home of his wife's parents, with his wife present on the night she left him. He and she were often there together for meals, parties and holidays. When he was ill she stayed overnight at his apartment and cared for him. On one occasion they stayed overnight at her parent's home together occupying the same bedroom. He drew plans for a new house and consulted with an electrician about doing work on the house and they looked at building lots together. They continued to see each other until the night he died when they had supper together at her parent's home. Later that night he suffered a heart attack and died in the hospital. The proof failed to establish any intent of the wife not to return to live with her husband or that her departure was unjustified and without the husband's consent or that separation was hardened or obstinate. The decree should therefore be reversed and the petition dismissed. (*Solomon* v. *Solomon*, 290 N. Y. 337; *Matter of Maiden*, 284 N. Y. 429; *Matter of Lapenna*, 16 A D 2d 655; 28 Carmody-Wait 2d, New York Practice, § 169.52) (Appeal from decree of Monroe Surrogate's Court.) Present — Bastow, P. J., Del Vecchio, Marsh, Witmer and Henry, JJ.